UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA ) M.J. No. 18-MJ-2525-MBB
FOR A CRIMINAL COMPLAINT )
CHARGING JOSE A. RODRIGUEZ WITH A )
VIOLATION OF 21 U.S.C. § 846 )

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent Jill Hardie, being duly sworn, depose and state that:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2016. I currently am assigned to the New England Field Division's Task Force 1 located in the Boston Office. Prior to my employment as a Special Agent, I was employed as a DEA Diversion Investigator from May 2012 to August 2016. As a Diversion Investigator, I was assigned to the DEA Boston Tactical Diversion Squad, a task force created to disrupt and dismantle those suspected of diverting licit pharmaceuticals and/or chemicals. Prior to my employment with DEA, I was employed an Intelligence Analyst at the New York/New Jersey High Intensity Drug Trafficking Area (HIDTA) under Homeland Security Investigation's El Dorado Task Force for three years.

2. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic

Agent Academy in Quantico, Virginia, and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## PURPOSE OF AFFIDAVIT

5. I submit this affidavit in support of an Application for a Criminal Complaint charging Jose A. RODRIGUEZ with violating Title 21, United States Code, Sections 846 (conspiracy to possess with intent to distribute and to distribute controlled substances).

6. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the DEA and other federal, state, and local law enforcement agencies. I have also reviewed information from a variety of additional sources, including a confidential source of information, and consensually recorded telephone calls. For the reasons set forth herein, I believe there is probable cause to believe that RODRIGUEZ has committed a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute and to distribute a controlled substance, to wit fentanyl).

7. This Affidavit is submitted for the limited purpose of establishing probable cause to believe that RODRIGUEZ has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

8. On October 22, 2018, agents seized two kilograms of a substance that field tested positive for the presence of fentanyl from a vehicle driven by Angel Javier Morell-ONEILL a/k/a "CUÑAO" (hereinafter, "CUÑAO"). After receiving <u>Miranda</u> rights, CUÑAO stated that he was en route to deliver the two kilograms of fentanyl to a drug customer. Thereafter, agents sought and obtained a search warrant for CUÑAO's residence at 142 Pleasant Valley Street,

Building 140, Apartment 201, Methuen, Massachusetts. (M.J. No. 18-2524-MBB). Agents executed the search warrant the same day and seized approximately thirty additional kilograms of suspected fentanyl and a firearm from CUÑAO's residence. Based on my training and experience, I am aware that possession of approximately 32 kilograms of fentanyl is consistent with possession with intent to distribute fentanyl. CUÑAO has been charged by Criminal Complaint with a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) (possession with intent to distribute 400 grams or more of fentanyl). (M.J. No. 18-2523-MBB).

9. CUÑAO elected to continue speaking with agents. He stated that he recently had received a shipment of drugs that was delivered by a driver of a tractor trailer truck. CUÑAO stated that he had a contact in Mexico that had coordinated the delivery of the drugs and had put him in contact with the truck driver. CUÑAO further stated that the truck driver was still in the Methuen area and was awaiting delivery of $40,000 to pay for transportation costs of the drugs he had delivered.

10. During the time that CUÑAO was with law enforcement agents, he received numerous calls and text messages on telephones that had been in his possession at the time he was stopped. One of the numbers that continued to call and text CUÑAO was telephone number (781) 492-3370. CUÑAO stated that the user of telephone number (781) 492-3370 was attempting to deliver money to him to pay for part of the truck driver's transportation costs. CUÑAO stated that the user of telephone number (781) 492-3370 was delivery the money on behalf of an unidentified third party.

11. Agents directed CUÑAO to answer a call from telephone number (781) 492-3370. CUÑAO did so. The call was recorded and was monitored by an agent. According to CUÑAO,

4

during the call, the user of telephone number (781) 492-3370 stated that he would be in Methuen in approximately one hour and would deliver $20,000 to a location chosen by CUÑAO.

12. Thereafter, CUÑAO was taken to the Massachusetts State Police barracks for booking. After CUÑAO had departed his residence, the user of telephone number (781) 492-3370 continued to call and text CUÑAO's telephone. At the direction of agents, CUÑAO's paramour, Sussy Soto-Medina, who had previously received her Miranda rights, answered an incoming call from telephone number (781) 492-3370. According to Soto-Medina, during the call, which was monitored by an agent, the user of telephone number (781) 492-3370 requested an address to deliver the $20,000. Soto-Medina stated that she would text him an address.

13. When Soto-Medina failed to provide an address, the user of telephone number (781) 492-3370 called CUÑAO's telephone again. At the direction of agents, Soto-Medina again answered the phone. According to Soto-Medina, during the call, which was monitored by an agent, Soto-Medina stated that she would call the user of telephone number (781) 492-3370 from another telephone. Thereafter, Soto-Medina called (781) 492-3370 from another telephone used by CUÑAO. During the call, which was monitored by an agent, Soto-Medina instructed the user of telephone number (781) 492-3370 to go to 142 Pleasant Valley Street and park in a handicapped parking spot in front of building 140. Soto-Medina inquired about what kind of car the user of telephone number (781) 492-3370 was driving, and he stated that he was driving a grey minivan. Soto-Medina provided directions over the telephone as the user of (781) 492-3370 approached CUÑAO's residence.

14. Agents conducting surveillance outside of 142 Pleasant Valley Street, Building 140 observed RODRIGUEZ arrive at the location driving a grey minivan. RODRIGUEZ parked the minivan in a handicapped parking spot outside of Building 140. At that time, agents

approached the minivan and instructed RODRIGUEZ to exit the car. When RODRIGUEZ did not comply, agents removed RODRIGUEZ from the minivan. At that time, a female passenger in the minivan exited the car.

15. Agents searched the minivan and located a large mechanical hidden compartment in the rear of the minivan. I am aware, based on my training and experience, that drug traffickers frequently transport drugs and drug proceeds in hidden compartments within motor vehicles in an attempt to evade law enforcement detection. The mechanical hidden compartment was empty. Agents also located a static hidden compartment behind the radio of the minivan. Inside the static hidden compartment, agents located an undetermined amount of cash, which was bundled into stacks secured by rubber bands. In my experience, it is common for drug traffickers to package drug proceeds in this way to facilitate the counting of the money.

16. Agents located a cellular telephone in the grey minivan. When agents dialed telephone number (781) 492-3370, the telephone in the grey minivan began ringing. As a result, I believe that RODRIGUEZ was the person using telephone number (781) 492-3370 to contact CUÑAO and to speak with Soto-Medina.

17. Agents issued RODRIGUEZ his Miranda rights. RODRIGUEZ at first denied knowledge of the currency but subsequently stated that he had been paid to deliver the currency on behalf of an unidentified third party.

18. Based on my training and experience, large-scale drug traffickers frequently use couriers to transport drugs and drug proceeds in order to distance themselves from contraband and evade law enforcement detection. Also based on my training and experience, large-scale drug traffickers use only trusted associates and members of their drug trafficking organizations as drug and money couriers to avoid theft of the drugs or drug proceeds.

19. Based on all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth herein, I believe that CUÑAO is a fentanyl distributor, that RODRIGUEZ works as a courier for a drug associate of CUÑAO, and that on October 22, 2018, RODRIGUEZ was delivering $20,000 to CUÑAO on behalf of an unidentified third party to pay for half of the transportation costs of a shipment of narcotics.

## CONCLUSION

20. Based on the foregoing, I believe there is probable cause to believe that on or about October 22, 2018, RODRIGUEZ did knowingly and intentionally conspire with one ore more persons to possess with intent to distribute and to distribute controlled substances, to wit fentanyl, in violation of Title 21, United States Code, Section 846. Accordingly, I respectfully request the Court issue a Criminal Complaint charging RODRIGUEZ with conspiracy to possess with intent to distribute and to distribute a controlled substance, to wit fentanyl, in violation of Title 21, United States Code, Section 846.

I declare that the foregoing is true and correct.

_____
JILL HARDIE
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me,
this 23nd day of October, 2018

_____
HONORABLE MARIANNE B. BOWLER
United States Magistrate Judge
District of Massachusetts